# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUWSA GREEN, | Civil Action No. 2: 13-cv-00008 |
| Plaintiff, | United States Magistrate Judge |
| v. | Cynthia Reed Eddy |
| BRIAN D. COLEMAN, SCI FAYETTE FACILITY MANAGER/ SUPERINTENDENT, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Presently pending is the "Motion to Dismiss Complaint," with brief in support, filed by Defendants (ECF Nos. 29 and 30) and the Brief in opposition filed by Plaintiff (ECF No. 34). For the reasons that follow, the Motion will be granted.[1]

### FACTUAL BACKGROUND

Plaintiff, Muwsa Green, is a prisoner currently incarcerated at SCI-Fayette. This action was initiated by Plaintiff on January 3, 2013, by the filing of a Declaration in Support of Request to Proceed *in forma pauperis*. By Order entered January 31, 2013, the case was dismissed without prejudice as Plaintiff had failed to file a motion to proceed *in forma pauperis* and/or pay the filing fee. (ECF No. 5.) On February 20, 2013, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* (ECF No. 7). The motion was granted the next day (ECF No. 8) and

---

[1] The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 35 and 36.

Plaintiff's handwritten Complaint was filed. (ECF No. 9.) In his Complaint, Plaintiff alleges his Eighth and Fourteenth Amendment violations under 42 U.S.C. § 1983 and appears to allege violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 - 12213. Named as Defendants were "Ms. Berrier, Mr. Bozelli, Buzas, Brian D. Coleman, DiSalivo, Dr. Gallucci, Darlene Linderman, Ms. Mitchell, PA Dept. of Corrections, Parson, Shirley Moore Smeal, and Carle Walker."[2] Also named as defendants were "Correction Officers John/Jane Doe."

Before service of the Complaint was effectuated, Plaintiff filed an Amended Complaint in which he voluntarily dismissed Defendants Darlene Linderman, the PA Dept of Corrections, Parson, Shirley Moore Smeal, Carle Walker, Jeffery A. Beard, and DiSalivo. (ECF No. 10).

In July, 2013, Defendant Ms. Mitchell filed a Motion to Dismiss the Amended Complaint. Plaintiff filed an opposition brief (ECF No. 25), and before the motion had been ruled upon, Plaintiff filed a Second Amended Complaint (ECF No. 28), which remains the operative complaint. Thereafter, Plaintiff moved to voluntarily dismiss Defendant Michele L. Diggs, which motion was granted by the Court on September 20, 2013 (ECF No. 33).

The remaining Defendants, all of whom are employed at SCI-Fayette, are Brian D. Coleman, Stephen Buzas, Gary Gallucci, and Louis Bozelli (collectively referred to as the "DOC Defendants"),[3] and Correctional Officers John / Jane Doe, who remained unserved.

---

[2] The names of the defendants appear in the manner as listed by Plaintiff. For some of the defendants, he fails to provide a first name.

[3] In his Response, Plaintiff "command[s] this esteem court to withdraw Berrier and Mitchell from off the civil action." Accordingly, Plaintiff's request is granted and Defendant Berrier is

From a review of Plaintiff's Second Amended Complaint, it is not entirely clear what claims are being asserted. However, the Second Amended Complaint states, in pertinent part, as follows:

> Green was confined in the Restricted Housing Unit (RHU) and (SMU) Special Management Unit at SCI Fayette where the disparity in mental health treatment as to similar (sic) situated prisoner occur constantly along with the reprisal and deprivation of serious medical mental health care, discrimination against Americans with Disabilities Act, denial of mind deliberate indifference for the Plaintiff Eighth, Fourteen Amendment violation claim.

Second Amended Complaint, at ¶ A. Plaintiff also appears to allege that some of the Defendants have engaged in retaliatory conduct against him, and that the supervisory Defendants have allowed the alleged retaliatory conduct to continue. *See* Second Amended Complaint, at ¶ B, p. 3.

Plaintiff makes bald assertions in his Second Amended Complaint, with no support or specifics. Nevertheless, distilled to its essence, it appears that the claims contained within the Second Amended Complaint are best summarized as follows: his food has been poisoned, he has received inadequate mental health care and treatment; his incoming mail has been intercepted in order for the Defendants to gain an advantage against him; he has been discriminated against in violation of the Americans with Disabilities Act; and his mental health illness has been exploited by several Defendants for "sadistical pleasures."[4]

---

dismissed from this action.

[4] Plaintiff provides a bit more information in his Brief in response to the motion to dismiss. Because Plaintiff is a prisoner appearing *pro se*, the Court will treat the factual allegations contained in his response as though they were included in his Second Amended Complaint. *See Baker v. Younkin*, No. 13-1580, -- F. App'x --, 2013 WL 3481724, at *2 n. 2 (3d Cir. July 3,

Presently pending is the Motion to Dismiss filed by the DOC Defendants, with brief in support (ECF Nos. 29 and 30). Defendants argue that the Second Amended Complaint should be dismissed as it provides no support or specifics regarding the actions or inactions of the DOC Defendants. Further, Defendants argue that the Second Amended Complaint should be dismissed because Plaintiff has failed to exhaust his administrative remedies. In his Second Amended Complaint, Plaintiff asserts that he has filed grievances on all claims raised in the complaint but that the Defendants "obstructed it" and he never received the grievance responses. Second Amended Complaint, at 8.[5]

## STANDARD OF REVIEW

A.  *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag*

---

2013) (citing *Lewis v. Att'y Gen. of U.S.*, 878 F.2d 714, 722 (3d Cir. 1989)).

[5] Although Defendants make a compelling argument for dismissal on the basis of non-exhaustion, they have done so by filing a motion to dismiss. Granting a failure to exhaust argument raised *via* a motion to dismiss is only appropriate where the face of the pleadings demonstrate non-exhaustion (*i.e.,* the complaint concedes non-exhaustion). *See Ball v. SCI Muncy,* 2010 WL 2600728 (3d Cir. June 2010). Here, the Second Amended Complaint states in essence that Defendants' actions hindered Plaintiff from exhausting his administrative remedies. Accordingly, Defendants' argument that Plaintiff failed to exhaust his administrative remedies is not properly asserted in a motion to dismiss. Accordingly, the Court will proceed to decide the motion to dismiss on the merits of Plaintiff's complaint.

*v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).[6] *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of

---

[6] The Court of Appeals for the Third Circuit has explained the liberal construction of pro se pleadings, as follows:

> The federal rules do not adhere to the ancient principle that a pleading must be construed most strongly against the pleader. Nor do the federal courts require technical exactness or draw refined inferences against the pleader; rather, they make a determined effort to understand what he is attempting to set forth and to construe the pleading in his favor, whenever justice so requires. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law. In these cases, technical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized to determine if any legally cognizable claim can be found within it.

*Lewis v. Attorney General of U.S.,* 878 F.2d 714, 722 (3d Cir. 1989) (quoting 5 C. Wright & A.

their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences where it is appropriate.

B.     *Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard*

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v.*

---

Miller, Federal Practice and Procedure § 1286, at 381-84 (1969)).

*Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal,* 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, '"where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a

7

claim, unless doing so would be inequitable or futile. See *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

## DISCUSSION

A.   *Retaliation Claims*

"Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution . . . ." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). To establish a section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements, *to wit*: that (1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Through his Second Amended Complaint, Plaintiff alleges that Defendant Coleman ordered Defendant Buzas to poison Plaintiff's food[7] and "to lock [Plaintiff] down in the RHU" in retaliation for Plaintiff bringing his prior lawsuit, in which he alleges that, while temporarily housed at SCI-Waymart, his incoming legal mail was improperly opened outside his presence.. Plaintiff further contends that he filed several written requests to "Defendants Brian and Berrier complain[ing] that he had been poison[ed] by Defendant Buzas . . . ." Second Amended Complaint, at 3.

---

[7] The Second Amended Complaint also alleges that Defendants Buzas, Berrier, and "Brian" "reckless clandestine with each other to try an murder Plaintiff." Second Amended Complaint, at 4. Other than this one statement, this allegation not again mentioned in the Second Amended

8

Additionally, Plaintiff alleges that Defendants "Brian, Buzas, Mitchell, and Berrier intercept his grievances, legal incoming mail" in order to "gain[] advantage by reading Plaintiff's confidential legal material" which, according to Plaintiff, also constitutes retaliation. *Id*. at 4.

The Court finds that Plaintiff's bare allegations of retaliation without more are implausible and conclusory. The factual allegations simply do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, the Second Amended Complaint fails to satisfy the necessary elements to support a retaliation claim.

B.  *Eighth Amendment Conditions of Confinement Claims*

The Eighth Amendment protects prison inmates from cruel and unusual punishment. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Allah v. Ricci*, -- F. App'x --, 2013 WL 3816043 (3d Cir. July 24, 2013). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or

---

Complaint.

safety. *Id.* However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992).

The Second Amended Complaint contains the following general allegation concerning Plaintiff's placement in solitary confinement:

> Plaintiff has been in solitary confinement since 2009/ Oct under mental duress psychic and/or somatic anxiety these said condition has significantly caused the plaintiff psych to deteriorate, mentally emotionally and spiritually which interferes with plaintiff's ability to improve mentally, physically, emotionally and spiritually and ultimately be mentally rehabilitated. Leaving Plaintiff scarred for life.

Second Amended Complaint, at 5.

The practice of housing certain problem prisoners in isolation from other inmates is not a condition of confinement that violates the Eighth Amendment. "[S]egregated confinement in solitary or maximum security is not *per se* banned by the Eighth Amendment." *Clifton v. Robinson*, 500 F. Supp. 30, 34 (E.D. Pa. 1980) (*quoting Burns v. Swenson*, 430 F.2d 771, 777 (8th Cir. 1979)). "As a general matter, the mere placement in solitary confinement, despite its accompanying extreme social isolation and reduced environmental stimulation—and the likelihood of some degree of psychological trauma that it entails—is not enough to rise to the level of an Eighth Amendment violation." *Washington–El v. Beard*, 2011 WL 891250, at *3 (W.D. Pa. Mar. 11, 2011) (internal quotation marks omitted). Administrative segregation, and its associated risk of psychological deterioration, "is not per se violative of the Eighth Amendment with respect to all potential inmates." *Id.*

Moreover, Plaintiff fails to allege any facts to demonstrate that the conditions of his confinement in the RHU / SMU deprived him of any basic need such as food, clothing, shelter,

10

sanitation, medical care or personal safety. Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual. *Hutto v. Finney*, 437 U.S. 678, 686 (1978); *Young v. Quinlan*, 960 F.2d 351, 363 (3d Cir. 1992).

It is only when confinement becomes so foul, so inhuman, and so violative of the basic concepts of decency that a federal court should interfere with prison officials who purportedly have the experience and expertise in matters of prison discipline. Here, there is no allegation in the Complaint which can be seen as alleging that Plaintiff was denied "the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834. Hence, Plaintiff's claim should be dismissed.

    C.    <u>*Eighth Amendment Medical Care Claims*</u>

The Second Amended Complaint sets forth a laundry list of complaints that Plaintiff has pertaining to the mental health treatment, or lack thereof, that he has received while at SCI-Fayette.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235–36 (3d Cir.2004); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir.2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1)

11

deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir.1987); *West v. Keve*, 571 F.2d 158, 161 (3d Cir.1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Colburn v. Upper Darby Twp,* 946 F.2d 1017, 1023 (3d Cir. 1991); *Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 347. "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Everett v. Nort*, No. 13-1864, slip op. at 6 (3d Cir. Nov. 21, 2013) (quoting *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)). Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir.1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir.1990).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Everett v. Nort*, No. 13-1864, slip op. at 6 (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)) (quotation marks omitted). Furthermore, it is also clear that the misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an

Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "the exercise by a doctor of his professional judgment is never deliberate indifference. *See e.g. Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997).

Given the liberal construction afforded to the *pro se* complaint, Plaintiff has arguably satisfied the serious medical need requirement at this early juncture in the proceedings. However, it is apparent that Plaintiff has failed to satisfy the second prong of the deliberate indifference analysis.

Throughout the Second Amended Complaint, Plaintiff makes general and conclusory claims about his medical treatment, e.g., he attempted suicide four times because SCI-Fayette failed to cure his bi-polar disorder; there are inadequate services under the ADA; that Defendant Berrier denied medical care; that Defendants Berrier, Buzas, Brian, Bozelli and Gallucci failed to protect him; that Defendants Coleman, Buzas and Berrier failed to follow policy and train personnel. Plaintiff fails to give any specific details surrounding these allegations or examples of how DOC Defendants failed to act.

Plaintiff acknowledges that while housed at SCI-Fayette he has received psychological treatment "to cure his bipolar disorder," although according to Plaintiff the treatment has been inadequate and often times he has been misdiagnosed. Second Amended Complaint, at 4, 5.

13

A prisoner's disagreement with "evaluations and opinions regarding him" are insufficient to set forth an actionable constitutional claim. *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir.1979). Accordingly, since the Second Amended Complaint acknowledges that Plaintiff was provided with ongoing treatment and that his claims are solely premised upon his disagreement with medical determinations and evaluations made by the prison's mental health care staff, the Court finds that a viable deliberate indifference claim has not been stated under *Estelle*. This determination is bolstered by the fact that Plaintiff has not alleged that there was any specific medical treatment which he should have received but was denied for a non-medical reason or that any prescribed care was improperly delayed.

It is also undisputed that Defendant Coleman is a non-medical prison official. The Court of Appeals for the Third Circuit in *Durmer* explained that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by nonmedical factors, a constitutional claim may be presented. See *id*.

Since there are no facts asserted in the Second Amended Complaint which could establish that Defendant Coleman had any personal involvement whatsoever in Plaintiff's medical treatment and since the Second Amended Complaint admits that Plaintiff was receiving care from the SCI–Fayette mental health staff, under the standards announced in *Durmer,* the Court concludes that a viable deliberate indifference claim has not been set forth against Defendant Coleman.

D.  *Americans With Disabilities Act Claims*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The United States Supreme Court has recognized that the provisions of the ADA are applicable to prisoners confined in state correctional institutions. *See Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206 (1996). "To establish a violation of Title II of the ADA, and inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Brown v. Deparlos,* 492 F. App'x 211, 215 (3d Cir.2012) (citing 42 U.S.C. § 12132). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." § 12102(1)A.

Plaintiff does not specifically allege a violation of the ADA. Instead, he states in his Second Amended Complaint that each of the Defendants "is in direct violation of the United States Constitution and Pennsylvania state law by discriminating against Americans with disabilities and inadequate rehabilitation services." Second Amended Complaint at 5. Later in the Complaint, Plaintiff alleges that he has been punished "for reason of his disability which is bipolar and a personality disorder . . ." *Id*. at 6. In his Response, Plaintiff contends that "Defendants Buzas, Bozilli, Galluccci and Coleman deliberately denied Green disability services,

15

programs, constitute a violation of the (ADA) Americans with Disabilities Act, U.S. Constitution, Eighth Amendment." Resp. at 2.

Based upon a careful review of the Second Amended Complaint and the Response, the Court finds that there are no specific allegations that Plaintiff is being denied access to any benefits, programs, or activities due to any disability. Plaintiff does not elaborate or detail what "disability services or programs" he has been denied. Accordingly, the Plaintiff's ADA claim will be dismissed.

E.  *The Fourteenth Amendment Claim*

"Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing [a plaintiff's] claims.' " *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).

Here, it appears that Plaintiff has attempted to raise a claim under the Eighth and Fourteenth Amendments against Defendants based on the same conduct - i.e., Defendants were deliberately indifferent to Plaintiff's serious medical needs. Because the Eighth Amendment provides an explicit source of protection for deliberate indifference to serious medical needs, Plaintiff's claim is preempted by the Eighth Amendment. Accordingly, Plaintiff's Fourteenth Amendment claim fails as a matter of law.

E. *Futility*

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Given that the Court has already provided Plaintiff with an opportunity to amend, (see ECF No. 24), the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012).

For the reasons discussed *supra*, the Court will not grant Plaintiff leave to amend as it would be futile.

#### CONCLUSION

For all the foregoing reasons, the Motion to Dismiss filed by the DOC Defendants will be granted. An appropriate Order follows.

#### ORDER

**AND NOW**, this 26th day of November, 2013, upon consideration of the Motion to Dismiss filed by Defendants (ECF No. 29), IT IS HEREBY **ORDERED** that the Motion is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED.**

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

*s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc: MUWSA GREEN
HV-5362
SCI Fayette
Box 9999
LaBelle, PA 15450

Sandra A. Kozlowski
Pennsylvania Office of Attorney General
Email: skozlowski@attorneygeneral.gov